# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

|                                        |     |                          |
|----------------------------------------|-----|--------------------------|
| DEBORAH MATTHEWS,                      | )   |                          |
|     Plaintiff,     | )   |                          |
|                                        | )   |                          |
|     v.             | )   | CAUSE NO.: 2:08-CV-37-PRC |
|                                        | )   |                          |
| UNITED STATES STEEL CORPORATION,       | )   |                          |
|     Defendant.     | )   |                          |

## OPINION AND ORDER

This matter is before the Court on a (1) Motion for Summary Judgment [DE 37], filed by

Defendant United States Steel Corporation ("U.S. Steel") on December 18, 2009, and a (2) Motion

for Summary Judgment [DE 50], filed by Plaintiff Deborah Matthews on March 8, 2010. For the

reasons set forth in this Opinion, the Court grants U.S. Steel's Motion for Summary Judgment as to

all of Ms. Matthews' claims under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §12101

*et seq.*, Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and 42

U.S.C. § 1981, and denies Ms. Matthews' Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

Ms. Matthews filed a charge with the Indiana Civil Rights Commission ("ICRC") and the

United States Equal Employment Opportunity Commission ("EEOC") on November 5, 2007,

contending that her discharge from U.S. Steel on August 10, 2007, amounted to a failure to

accommodate her disability in violation of the ADA:

> On June 1, 2007, I was released to return to work by my private physician with
> restrictions. I was informed by my supervisor, Hector Rogue, that I could not return
> to work with the restrictions. On August 3, 2007, I was placed on a five day
> suspension for providing false medical information. On August 10, 2007, my
> suspension was converted to a discharge.

Def. Br., Exh. 15.  The EEOC mailed Ms. Matthews a Dismissal and Notice of Rights letter on November 7, 2007.  Ms. Matthews filed a Complaint in this Court under cause number 2:08-CV-37 on February 5, 2008, seeking damages for an alleged violation of the ADA.  U.S. Steel filed an Answer on April 11, 2008.

Ms. Matthews filed a second charge with the ICRC and EEOC on May 9, 2008, alleging discrimination based on race, sex, and age for the same events identified in her first charge.  A Dismissal and Notice of Rights letter was issued on May 15, 2008.  Ms. Matthews then filed a second Complaint with this Court under cause number 2:08-CV-166 on June 3, 2008, seeking damages under Title VII and 42 U.S.C. § 1981 for intentional race discrimination in employment and the ADA.  The second Complaint alleged that U.S. Steel provided work accommodations to a white male who could not perform his regular duties after surgery but refused to make comparable accommodations for her disability.  On July 30, 2008, U.S. Steel filed an Answer and Counterclaim in the second case, alleging that Ms. Matthews committed fraud by knowingly and purposefully misrepresenting her medical condition to U.S. Steel in order to obtain Sickness and Accident Benefits.  Ms. Matthews filed an Answer to the Counterclaim on  October 14, 2008.

The two cases were consolidated on September 10, 2008, into this case number 2:08-CV-37.

On December 18, 2009, U.S. Steel filed the instant Motion for Summary Judgment and memorandum in support.  On March 8, 2010, Ms. Matthews filed a Motion for Summary Judgment. On March 9, 2010, she filed a "Plaintiff's Brief in Response to Defendant's Summary Judgment Motion," which is missing pages 4 and 7.  On March 10, 2010, she filed a "Plaintiff's Appendix of Evidentiary Material in Response to Defendant's Summary Judgment Motion."   On March 12, 2010, the Court issued an Order directing Ms. Matthews to file an Amended Response brief

containing the missing pages by March 15, 2010. No Amended Response was filed. On March 24, 2010, U.S. Steel filed a "Reply to Plaintiff's Motion in Response to Defendant's Summary Judgment Motion." Ms. Matthews did not file a reply in support of her motion, and the time to do so has passed.

The parties orally agreed on the record to have both cases assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in the consolidated case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## MATERIAL FACTS

The following are the facts viewed in the light most favorable to the nonmoving party.[1] Ms. Matthews, an African-American female, completed an application for employment with U.S. Steel in Gary, Indiana, on April 4, 2000. As part of the hiring process, she underwent a pre-employment physical and completed a Health Inventory form. On the form, Ms. Matthews indicated that she did not now or ever have neurological conditions and did not now or ever have a back injury or other back symptoms or conditions. Employment application materials provided to Ms. Matthews by U.S. Steel indicated that a failure to provide accurate and truthful information on the application or Health Inventory form was cause for discharge.

---

[1] Local Rule 56.1(a) requires that a party opposing a motion for summary judgment submit a response that includes a "Statement of Genuine Issues" setting forth all material facts as to which a genuine issue exists. Local Rule 56.1(a) further provides that the "Statement of Genuine Issues" and the facts stated therein shall set forth all material facts, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence. Failure to include such crucial facts may be detrimental to the non-movant's case because the Court assumes the facts as claimed and supported by admissible evidence submitted by the moving party, unless they are controverted with supporting evidence by the nonmoving party. *See* L.R. 56.1(b). Ms. Matthews has provided a Statement of Material Facts, from which one page is missing, within her Response to Defendant's Motion for Summary Judgment and identifies as admissible evidence her sworn Affidavit and the Arbitration Awards of July 2008 and October 2009. The Court relies on the admissible material facts in U.S. Steel's Statement of Material Facts that are not contested by Ms. Matthews' Affidavit and the Arbitration Awards.

Ms. Matthews was hired by U.S. Steel as a Truck Driver in the Transportation Department; her duties included transporting steel coils and slabs within Gary Works on flatbed trucks and operating a crane. Ms. Matthews was a union employee represented by the United Steelworkers of America ("USWA"), the recognized collective bargaining representative of labor employees at Gary Works. As a result, the terms of her employment were set forth in a Basic Labor Agreement ("BLA") between U. S. Steel and USWA dated May 20, 2003. In 2001, Ms. Matthews moved to the Hot Rolling Division–Pickle Department where she worked as a Utility Person (Labor Grade 1) until 2007. As a Utility Person, she performed the function of "Turnaround Operator," which entailed sitting in a small "shanty" and pushing buttons on a computer that operated a train transporting coils. She would occasionally clean the work area of steel debris, garbage, and cigarette butts, and, for a brief period of time, she inspected steel coils. In 2007, Ms. Matthews worked in the "Spares" Department where she drove a truck to transport supplies, parts, and machinery in the plant and inventoried supplies and parts. Generally, Utility Technicians who hold Labor Grade 2 positions under the BLA perform work in Spares; however, Utility Persons with a Labor Grade 1 are occasionally assigned temporarily to work in Spares to cover vacancies and receive Labor Grade 1 wages for the work. Under the BLA, a Utility Person could only work in Spares if a vacancy existed or if additional manpower was needed.

On or about January 7, 2007, Ms. Matthews reported numbness and tingling in her leg to U.S. Steel. On January 9, 2007, she filed a claim for Sickness and Accident ("S&A") benefits with a supporting form from her physician, Dr. Isidora Nantes, who initially opined that Ms. Matthews could possibly return to work on January 16, 2007. Ms. Matthews went on S&A leave and collected benefits beginning January 9, 2007. Claudia Chiaro, a Registered Nurse employed by the S&A

claims program manager, was assigned as Case Manager over Ms. Matthews' S&A claim. Ms. Chiaro monitored Ms. Matthews' medical condition and spoke with Ms. Matthews as well as her physicians and work supervisors to determine whether she could perform her job functions. Ms. Matthews did not return to work in January, submitting S&A continuation forms on January 15, February 12, March 2, March 19, and March 30, based on Dr. Nante's opinion that Ms. Matthews could not return to work for an undetermined period due to lower back pain.

On April 3, 2007, Ms. Matthews presented for a medical exam in Merrillville, Indiana, required for renewal of her Commercial Driver's License ("CDL") and unrelated to her work at U.S. Steel. The examining nurse practitioner noted no problems with Ms. Matthews' extremities or spine. Ms. Matthews also submitted a health history form to the Indiana Department of Revenue for the CDL renewal indicating no illness or injury in the last 5 years, no spinal injury, and no chronic low back pain. Ms. Matthews never told the State of Indiana that she was restricted from driving a truck when she applied to renew her CDL.

On April 16, 2007, Ms. Matthews submitted another S&A continuation form, signed this time by Dr. Rajiv Adlaka, her physician, stating that Ms. Matthews was unable to work. On May 4, 2007, U.S. Steel received an S&A continuation form signed by Dr. Richard Cristea, an examining Neurologist, who noted that Ms. Matthews' return to work date was "undetermined" and that she was restricted from driving a truck or sitting for more than 30 minutes.

In April or May 2007, Ms. Matthews called Ms. Chiaro and her supervisor Hector Roque to inquire whether she could return to work with these restrictions. She was initially told by Mr. Roque that the restrictions prevented her from returning. On June 7, 2007, Ms. Chiaro and Mr. Roque again discussed her restrictions. Mr. Roque advised Ms. Chiaro that both the Truck Driver and

Turnaround Operator positions involved sitting. If she returned with those restrictions, Ms. Matthews would be performing only a subset of tasks required of Utility Persons, and her coworkers would have to cover the duties she could not perform. Under the BLA, union employees are required to perform all job functions within their job classification. At some point in May or June 2007, Ms. Matthews spoke with USWA representatives William McCall and John Arroyo about returning to work with restrictions. USWA investigated the possibility of reassignment to either a "Weigher's" job or one in the Spares department.

On June 27, 2007, a company hired by U.S. Steel to perform video surveillance of Ms. Matthews' activities while on S&A leave recorded video footage of Ms. Matthews pumping gas, standing for approximately 60 minutes, driving to and from her home, entering and exiting a grocery store and Wal-mart, and loading groceries and cases of water and of another beverage into her vehicle.

On June 29, 2007, during a telephone conversation with Ms. Chiaro, Ms. Matthews complained of lower back pain that went down her leg and stated that her back "goes out" and "knocks me down." (Def. Br., App'x 23, ¶ 18, Ex. 9).

On July 12, 2007, Ms. Chiaro attempted to contact a supervisor about the "Weigher's" job but learned that the position was not available. On July 25, 2007, Ms. Matthews informed Ms. Chiaro that her union representative was attempting to find her a job that would allow her to move around more freely because Dr. Cristea felt that sitting in a shanty did not provide Ms. Matthews enough room to move. On August 8, 2007, Ms. Chiaro learned from the USWA representative that the Spares position was not within Ms. Matthews' sitting and driving restrictions.

On August 3, 2007, based on its review of the surveillance tape, U.S. Steel issued two five-day suspensions to Ms. Matthews, subject to discharge, for providing false information to medical personnel and for misrepresenting a medical condition to obtain S&A benefits. In her deposition, Ms. Matthews stated that U.S. Steel issued this discipline based upon its review of the surveillance tape. On August 15, 2007, the suspensions were converted to a discharge.

USWA filed a grievance on Ms. Matthews' behalf, challenging the termination. After a hearing pursuant to the BLA, the grievance proceeded to an arbitration hearing on March 19, 2008. At no point during the grievance and arbitration proceedings did Ms. Matthews contend that she was disciplined based upon disability or race. In an Arbitration Award dated July 15, 2008, the Arbitrator sustained the grievance, finding that while the video provided some evidence that Ms. Matthews exaggerated her pain, it was not persuasive by itself, since none of her doctors or physical therapists indicated a suspicion that Ms. Matthews was exaggerating her symptoms. The Arbitrator ordered that Ms. Matthews' employment be reinstated, but without back pay because she was not yet released to return to work without restrictions and because there was no evidence that work was available that accommodated her restrictions.

However, during the March 19, 2008 arbitration hearing, Ms. Matthews testified that she had injured her back in a 1996 traffic accident and, as a result, had been off work for 18 months. Determining that this testimony was inconsistent with her answers to questions on the pre-hire Health Inventory form, U.S. Steel's Labor Relations Department, months prior to the Arbitrator's July 2008 decision, served Ms. Matthews with a five-day suspension, pending discharge, for providing false information on the pre-hire Health Inventory form. On April 1, 2008, U.S. Steel held a preliminary hearing with Ms. Matthews and USWA to review facts relating to the new discipline.

On April 3, 2008, U.S. Steel converted the suspension to a discharge. USWA filed a grievance challenging this second discharge on April 14, 2008, and an arbitration hearing was held on August 19, 2009. In the Arbitration Award dated October 16, 2009, the Arbitrator determined that U.S. Steel had proper cause for the April 3, 2008 discharge, the grievance was denied, and the discharge became final. Ms. Matthews never challenged the second discharge before the EEOC or in court.

In her deposition taken March 24, 2009, Ms. Matthews contends that she was treated less favorably than four allegedly similarly situated white employees–Don Eaton, Beth Ziembiecki, Frank Cruz, and Adam Kowalczyk–who were allegedly allowed to work with some kind of restriction.

## ANALYSIS

U.S. Steel seeks summary judgment in its favor on the claims in Ms. Matthews' consolidated Complaints for disability discrimination under the ADA and race discrimination under both Title VII and 42 U.S.C. § 1981. Ms. Matthews has filed a Motion in Response to Defendant's Motion for Summary Judgment, seeking summary judgment in her favor on all issues in this case. The Court considers the claims of race and disability discrimination in turn.

### A. Race Discrimination

To avoid summary judgment on a race discrimination claim brought under Title VII or § 1981, a plaintiff may show discrimination using either the "direct" or "indirect" methods of proof. *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008); *Humphries v. CBOC West, Inc.*, 474 F.3d 387, 403-04 (7th Cir. 2007) (recognizing that the same requirements apply to claims brought under Title VII and § 1981). As Ms. Matthews has not offered any direct evidence of discrimination, the Court considers her claims under the indirect method, guided by the familiar burden-shifting method of

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *See Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007) (discrimination in workload, pay, and termination). Under the indirect method, Ms. Matthews must first establish a prima facie case of race discrimination by showing that (1) she is a member of a protected class; (2) she was meeting her employer's legitimate performance expectations; (3) she suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably. *See Fane*, 480 F.3d at 538 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)).

If a plaintiff establishes a *prima facie* case of race discrimination, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the unfavorable employment decision, which then shifts the burden of proof back to the plaintiff to demonstrate that the defendant's reasons are a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802-803; *Fane*, 480 F.3d at 538. A plaintiff's failure to satisfy any element of the *prima facie* case or to establish pretext is fatal to the case. *See Hilt-Dyson v. City of Chi.*, 282 F.3d 456, 465 (7th Cir. 2002).

Ms. Matthews, an African-American, alleges that U.S. Steel discriminated against her based on race in violation of Title VII and § 1981 first by denying her the same reasonable accommodations as her white co-workers with medical restrictions when she was told she could not return from disability leave because there was no available position she was qualified to perform under the BLA with her restrictions. Second, as an African-American with disability-related restrictions, Ms. Matthews alleges race discrimination when U.S. Steel terminated her employment on August 15, 2007, while allowing white employees with disability-related restrictions to retain their jobs. U.S. Steel seeks summary judgment on these claims, arguing that Ms. Matthews cannot

demonstrate a prima facie case of race discrimination and has offered no evidence of pretext. In her response, Ms. Matthews abandons her race discrimination claims, failing to oppose U.S. Steel's arguments or to make any argument for summary judgment in her favor on the claims.

Regardless, both claims of race discrimination fail on the fourth element of the prima facie case, which, based on Ms. Matthews' allegations in this case, requires her to "show that members of the comparative group are 'directly comparable to her in all material respects.'" *Atanus*, 520 F.3d at 673 (quoting *Burks v. Wisconsin Dep't of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)). Relevant factors include "whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." *Id.* (internal quotation marks omitted) (quoting *Burks*, 464 F.3d at 751). The Court also considers whether they have "engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane*, 480 F.3d at 540 (citing *Snipes v. Ill. Dep't of Corrs.*, 291 F.3d 460, 463 (7th Cir. 2002). In this case, the most relevant factors are whether the employee's disability directly interferes with the ability to perform the requirements of the employee's position and whether U.S. Steel believed that any of the other employees had misrepresented the extent of their disabilities.

Although Ms. Matthews does not address her race claims on summary judgment, in her deposition, she identifies as comparators four white U.S. Steel employees—Don Eaton, Beth Ziembiecki, Frank Cruz, and Adam Kowalczyk—each of whom she asserts had some form of disability yet were allowed to work with medical restrictions and were not terminated. Ms. Matthews testified that she did not know what Mr. Eaton's restrictions were, where he worked, who his immediate supervisor was, what his medical condition was, or from whom she obtained the

information about him working with restrictions. Ms. Matthews did not clearly identify Mr. Cruz's ailment, although she did say "it had something to do, I think, with his–his arm," and she learned of the situation by talking with him and other unidentified people. (Def. Br., App'x 25, pp. 164-65). Ms. Matthews testified that she heard from "someone" in the union hall that Mr. Kowalczyk possibly lost part of his foot, although she was unsure of his ailment. As for Ms. Ziembiecki, Ms. Matthews testified that she purportedly weighed coils and had a standing restriction but Ms. Matthews did not provide evidence of a standing restriction and only became aware of the restriction from talking with Ms. Ziembiecki and from seeing her "in the women's wash house with her leg up." *Id*. at p. 162. While personal knowledge may form the basis of evidence offered in opposition to summary judgment and may include reasonable inferences supported by facts in the record, such inferences may not be based on flights of fancy, speculation, hunches, or intuitions. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004); *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003). Ms. Matthews' testimony reveals that she does not have personal knowledge of the four individuals' restrictions, accommodations, or job requirements, and she has offered no admissible evidence to support her allegations sufficient to demonstrate that any of the four are similarly situated.

In contrast, U.S. Steel offers evidence that the four individuals are not similarly situated regarding the impact of their disabilities on their work. Mr. Eaton, who worked in the Pickle Department as a Labor Grade 1 since 2006, was restricted from performing gas rescue unless he used a specific lens kit. Mr. Cruz has been a Labor Grade 4 Maintenance Technician–Electrical in Operations Services West since 2003; he has no formal medical restriction but cannot work a job that requires 20/20 vision. Mr. Kowalczyk has been a Labor Grade 2 in the Pickle Department since

2004 and is restricted from performing gas rescue, walking, and climbing. Finally, Ms. Ziembiecki

has been a Labor Grade 2 in the Pickle since 2003; in 2007, she was only restricted from gas rescue.

As discussed in more detail in the context of pretext below, the BLA requires that union members

be able to perform all job functions within their classification, and Ms. Matthews' sitting and driving

restrictions prevented her from being able to perform all the functions of the positions of a Utility

Person. None of these individuals performed the same job as Ms. Matthews or had similar

restrictions that impacted their jobs. In addition, Ms. Matthews has not offered evidence that U.S.

Steel believed any of the white employees working with disability-related restrictions had

misrepresented the severity of their disabilities or had engaged in any other misconduct constituting

cause for termination. Because Ms. Matthews has not identified any similarly situated employees

that were treated more favorably, she cannot meet her burden of establishing a prima facie case of

race discrimination in either the decision not to allow her to return to work with restrictions or her

termination in August 2007, and summary judgment in favor of U.S. Steel on her race claims is

warranted.

       Even if Ms. Matthews could establish a prima facie case of race discrimination, the Court

finds that U.S. Steel has advanced a legitimate, nondiscriminatory reason for not permitting her to

return to work and for terminating her employment. Regarding her return to work with restrictions,

U.S. Steel asserts that the BLA requirement that union members be able to perform all job functions

within their classification prevented it from placing Ms. Matthews in a position that would cause

other union members to perform parts of her job. All of the positions available to Ms. Matthews as

a Utility Person required extensive sitting, and Ms. Matthews' doctor restricted her from driving a

truck and from sitting for greater than thirty minutes at a time. The position of Turnaround

Operator, entails sitting in a little "shanty" to operate a conveyor chain and turnaround device for transporting coils, general maintenance, and driving a scooter, forklift, and/or truck. Occasionally, Utility Persons would be assigned to the "Spares" Department where they drive a truck to transport supplies, parts, and machinery in the mill. The evidence demonstrates that U.S. Steel conferred with Ms. Matthews' union to find a position for her but that none was available with her restrictions. Ms. Matthews has offered no evidence that U.S. Steel's decision for not permitting her to return to work was motivated by racial animus or that the reasons offered by U.S. Steel were pretextual.

Regarding her termination, U.S. Steel asserts that it believed Ms. Matthews provided false information to medical personnel and misrepresented a medical condition to obtain S&A benefits based on surveillance tapes recorded in June 2007 of her performing activities inconsistent with prior and subsequent statements she made to medical personnel concerning her physical condition. U.S. Steel had placed Ms. Matthews under surveillance to monitor her activities while she was on S&A leave. The video shows Ms. Matthews pumping gas, standing for approximately 60 minutes, and going to the grocery store at 11:00 a.m. on June 27, 2007. Upon exiting the store, Ms. Matthews is seen unloading three cases of water, one case of soda or beer, a watermelon, and five bags of groceries into her vehicle. She then went to Wal-Mart before returning home at 1:51 p.m. Two days later, on June 29, 2007, Ms. Chiaro spoke with Ms. Matthews by telephone, who complained of her debilitating back pain. Pretext is not demonstrated by showing that the employer was mistaken; rather, it requires "[p]roof that the defendant's explanation is unworthy of credence." *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 642 (7th Cir. 2008) (citations and quotation marks omitted). U.S. Steel had a good faith basis to discipline Ms. Matthews for its belief that she was misrepresenting her medical condition. Ms. Matthews has offered no facts to show that her race played a role in her

termination, but she has acknowledged that U.S. Steel's actions were based upon the surveillance tape. At no time during the grievance and arbitration proceedings did Ms. Matthews contend that she was discharged for racially discriminatory reasons. Although the arbitrator later overturned the August 2007 discharge because Ms. Matthews' doctors had not indicated that she was misrepresenting her pain, Ms. Matthews has not offered evidence to suggest that U.S. Steel did not honestly believe that she was misrepresenting her pain and, thus, has not shown pretext.

Finally, U.S. Steel argues in a footnote that Ms. Matthews' Title VII race claim based on a failure to accommodate her medical restrictions must be dismissed as time-barred. In a deferral state such as Indiana, Title VII provides that a charge of discrimination must be filed with the EEOC "within three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). A failure to submit a timely charge with the EEOC precludes the employee from bringing a claim in court under Title VII. *Id.* at § 2000e-5(f)(1). Based on the May 9, 2008 filing date of Ms. Matthews' EEOC charge, her Title VII claims are time-barred if they accrued on or before July 14, 2007. Ms. Matthews states that she attempted to return to work with restrictions in April or May 2007 and that Mr. Roque declined the request at that time. However, the record contains evidence of discussions that occurred at U.S. Steel with USWA representatives, Ms. Matthews' Case Manager, and Ms. Matthews' U.S. Steel supervisors regarding her restrictions and possibilities for her reassignment on June 7, 2007, July 12, 2007, July 25, 2007, and August 8, 2007. U.S. Steel does not discuss whether each of these conversations was a new, discrete act of discrimination or whether each was a continuation of the initial alleged failure to accommodate. Regardless of whether some or all of her Title VII claims may be time barred, Ms. Matthews has not

raised any issue of material fact to meet her burden on the merits of her race discrimination claims and summary judgment as a matter of law in favor of U.S. Steel is appropriate.

## B. Disability Discrimination

The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2008).[2] The ADA also requires employers to make reasonable accommodations for the disabilities of qualified individuals. *Id.* at 12112(b)(5)(A). Ms. Matthews asserts a failure to accommodate claim based on U.S. Steel's decision not to allow her to return to work with restrictions to accommodate her sitting and driving restrictions in approximately April or May 2007 as well as a disparate treatment claim based on her discharge in August 2007. *See Wright v. Illinois Dept. of Corrs.*, 204 F.3d 727, 730 (7th Cir. 2000) (identifying the two types of disability discrimination claims under the ADA as disparate treatment and failure to accommodate claims). Because Ms. Matthews does not attempt to prove either claim with direct evidence, she must proceed under the indirect method of proof as to both. *See Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 572 (7th Cir. 2001).

To establish a prima facie case of either failure to accommodate or disparate treatment, Ms. Matthews must first demonstrate that she has a "disability" within the meaning of the ADA and that she is a "qualified individual" able to perform the essential functions of the job, either with or

---

[2] The substantial changes Congress made to the ADA pursuant to the ADA Amendments Act of 2008, effective January 1, 2009, include the following changes to the cited language: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The revisions do not appear to impact the analysis in this case, and there is no argument for retroactive applicability. *See Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961 n. 1 (7th Cir. 2010).

without reasonable accommodation. *See id.* (setting forth the threshold requirements for both failure to accommodate and disparate treatment claims as well as the standards for proving each); 42 U.S.C. § 12112(a)-(b). The ADA "is not a general protection of medically afflicted persons." *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997). Rather, to establish that she has a "disability," the statute requires Ms. Matthews to show either that (1) she has a physical or mental impairment that substantially limits her in one or more major life activities; (2) she has a record of such an impairment; or (3) the employer regarded her as having such an impairment. 42 U.S.C. § 12102(1); *Bodenstab v. County of Cook*, 569 F.3d 651, 656 (7th Cir. 2009). Ms. Matthews does not allege or claim that she has a "record of impairment" or was "regarded as having such an impairment" and, thus, must demonstrate that she has such physical or mental impairment.

The term "major life activities" includes "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).[3] An individual is "substantially limited" in a major life activity when she is "[u]nable to perform a major life activity that the average person in the general population can perform" or "[s]ignificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i)-(ii). When considering whether an individual is substantially limited in a major life activity, the Court considers the nature and severity of the impairment, the duration or

---

[3] The 2008 amendments to the ADA provide that major life activities "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A) (effective Jan. 1, 2009).

expected duration of the impairment, and the permanent or long-term impact or the expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2)(i)-(iii).

U.S. Steel disputes Ms. Matthew's assertion that she has a disability within the meaning of the ADA. As evidence of disability, Ms. Matthews offers the statement in her Affidavit that she suffered from numbness and tingling in her leg as well as persistent low back pain and offers her medical history of treatment for back and leg pain for the period of January through May 2007. The medical records indicate that she reported leg and back pain, received a diagnosis of a herniated disc with lumbar radiculopathy, was not medically cleared to return to work at U.S. Steel for an indeterminate period, and was instructed to neither drive a truck nor sit for more than thirty minutes at a time.

In contrast, the nurse practitioner who examined Ms. Matthews in April 2007 for the renewal of her CDL license indicated no problems with her extremities or spine. Ms. Matthews did not tell the State of Indiana that she had any restrictions from driving a truck when she was renewing the license in April 2007, notwithstanding the May 4, 2007 recommendation of Dr. Cristea that she not drive a truck. When Ms. Matthews completed the health history form for the CDL renewal, she marked "no" for "any illness or injury in last 5 years;" "no" for "spinal injury and disease;" and she did not check the box for "chronic law back pain." (Def. Br., App'x 5, App'x 25 pp. 98-104). At her deposition, Ms. Matthews testified that she could drive a vehicle, cook, clean, do laundry, and generally care for herself in March 2007. She also testified that there was work that she could perform within her restrictions when she wanted to return to work in April 2007, explaining that she could inventory parts, record the weight of coils, and do office work in Spares.

Although there is conflicting evidence regarding the severity of Ms. Matthews' leg and back pain, based on evidence of record, Ms. Matthews has not demonstrated that her back and leg pain "substantially limits" a major life activity. Ms. Matthews asserts that she is substantially limited in the major life activity of sitting. While sitting is considered a major life activity, the Seventh Circuit has previously found that a restriction on sitting more than thirty minutes at a time does not support a conclusion that the individual is substantially limited in the major life activity of sitting. *Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 784-85 (7th Cir. 2007) (sitting no more than 30-minutes at a time); *see also Maclin v. SBC Ameritech*, 520 F.3d 781, 787 (7th Cir. 2008) (sitting no more than two hours at a time). Ms. Matthews' restrictions on sitting are similar to those of the plaintiff in *Squibb*, and the Court similarly concludes that on the record in this case, a trier of fact could not conclude rationally that Ms. Matthews is substantially limited in the major life activity of sitting.[4]

Second, Ms. Matthews arguably contends that she is substantially limited in the major activity of working, which requires a showing that she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630.2(j)(3)(i); *see also Squibb*, 497 F.3d at 782-83; *Baulos v. Roadway Express, Inc.*, 139 F.3d 1147, 1151-53 (7th Cir. 1998). The impairment must substantially limit employment generally, not merely prevent an employee from performing a particular job. *Baulos*, 139 F.3d at 1151 (holding that preclusion from one type of truck-driving job is not evidence of disqualification from a class or broad range of jobs); *see also Contreras v. Suncast Corp*, 237 F.3d 756, 763 (7th Cir. 2001) (finding that restrictions on

---

[4] In her brief, Ms. Matthews cites *Stone v. City of Mount Vernon*, 118 F.3d 92 (2d Cir. 1997), in support of her sitting limitation, but the facts and findings she references are not found in *Stone*. It is unclear what case Ms. Matthews is in fact relying on or how *Stone* supports her argument.

lifting weight, engaging in strenuous work, and inability to drive a forklift did not preclude work from a broad class of jobs); 29 C.F.R. § 1630.2(j)(3)(i) ("The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.").

Ms. Matthews was declared unable to perform sitting and driving tasks associated with her specific job as a Utility Person and Turnaround Operator, but she has offered no evidence to show that these limitations make her unable to perform a class of jobs or a broad range of jobs. In fact there were other jobs at U.S. Steel that she was qualified to perform but that were unavailable at the time she was seeking to return to work with restrictions. The evidence of record demonstrates that Ms. Matthews is capable of sitting while on driving errands and that her restrictions as to driving and sitting at U.S. Steel did not preclude her from renewing a CDL license used for sitting/driving work generally. Because Ms. Matthews has not met her burden of demonstrating that she has a disability within the meaning of the ADA either at the time U.S. Steel determined that she could not work with restrictions or when it discharged her, summary judgment on her ADA claims in favor of U.S. Steel is warranted.

Ms. Matthews also fails to establish that she is a "qualified individual" able to perform the essential functions of her job, either with or without reasonable accommodation. The ADA defines "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions required of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *Gratzl v. Office of Chief Judges of the 12th, 18th, 19th and 22nd Judicial Circuits*, 601 F.3d 674, 679 (7th Cir. 2010). Whether a particular duty is an essential function requires consideration of factors such as "the employee's job description, the employer's opinion, the amount of time spent performing the function, the

consequences for not requiring the individual to perform the duty, and past and current work experiences." *Gratzl*, 601 F.3d at 679 (quoting *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 819 (7th Cir. 2004)). In this case, the record shows that the BLA governs the terms and conditions for the Utility Person job held by Ms. Matthews. The essential functions of the job included operating mobile equipment (such as trucks, scooters, and forklifts), the Turnaround Operator function, and performing general cleaning and maintenance. Utility Persons are required to perform these different job functions on any given shift, and the BLA requires that union members be able to perform all functions within their classification. It is undisputed that Ms. Matthews was restricted from driving a truck, as Ms. Matthews' doctors submitted S&A forms with this restriction. Additionally, Ms. Matthews reported to Ms. Chiaro that her doctor believed that she could not do the Turnaround Operator job, which required sitting in the shanty, because it did not provide enough room for her to move around. Thus, Ms. Matthews is not a qualified individual with a disability, and summary judgment in favor of U.S. Steel is merited.

### 1. Failure to Accommodate

Even if Ms. Matthews had established that she was a qualified individual with a disability, she has not shown that U.S. Steel failed to reasonably accommodate her disability, which is required to make a prima facie case of failure to accommodate. *See Gratzl*, 601 F.3d at 678 (citing *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005)); 42 U.S.C. § 12112(a)-(b). Under the ADA, the plaintiff has the burden of demonstrating that a vacant position exists for which she is qualified. *See Jackson v. City of Chi.*, 414 F.3d 806, 813 (7th Cir. 2005). Prior to April 2007, Ms. Matthews' doctors prohibited her from returning to work. In May or June 2007, Ms. Matthews contacted Ms. Chiaro and Mr. Roque, requesting to return to work with doctor-imposed restrictions

from driving a truck and from sitting for more than thirty minutes at a time, which would allow her to perform only a subset of the tasks required for Utility Persons. Accommodating this request would require Ms. Matthews' co-workers to cover some of her duties, and the Seventh Circuit has determined that such a requirement is not mandated by the ADA. *See Basith v. Cook County*, 241 F.3d 919, 929 (7th Cir. 2001) ("[A]n employer need not reallocate the essential functions of a job, which a qualified individual must perform.") (quoting *Benson v. Nw. Airlines, Inc.*, 62 F.3d 1108, 1112-13 (8th Cir. 1995); citing *Hansen v. Henderson*, 233 F.3d 521, 523 (7th Cir. 2000)); *see also Watson v. Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002) (recognizing that the ADA does not require employers to create new positions to accommodate an employee with a disability). In this case, U.S. Steel unsuccessfully attempted to find a position for Ms. Matthews when she sought to return to work. Managers talked to Ms. Chiaro and the USWA about possibly placing Ms. Matthews in the Turnaround Operator job, the "Weigher's Job," and a position in Spares. However, the Turnaround Operator job requires extensive sitting, no vacancy existed in the Weigher's job, and the Spares job was not available to Ms. Matthews because it is a higher labor grade under the BLA. Ms. Matthews has not met her burden of showing the existence of a vacant position for which she was qualified.

## 2. Disparate Treatment

Ms. Matthews alleges that her discharge in August 2007 was motivated by discriminatory animus based on her disability. Even if Ms. Matthews had established that she was a qualified individual with a disability, she cannot make out the remainder of the prima face case for disparate treatment, which requires her to show that she was treated less favorably than a nondisabled, similarly situated person. *See Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). Ms.

Matthews has not identified any nondisabled employees who misrepresented or whom U.S. Steel believed misrepresented medical conditions or who engaged in some other misconduct severe enough to provide cause for dismissal but whose employment was not terminated.

If a plaintiff cannot identify a similarly situated employee, as in the instant case, the Seventh Circuit has said that the *prima facie* test as a whole "requires a showing that the circumstances surrounding the adverse action indicate that it is more likely than not that [her] disability was the reason for it." *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006) (citations and internal quotation marks omitted). The only evidence Ms. Matthews has offered to cast doubt on the motivation for her discharge is discussed below in the context of the pretext analysis and does not demonstrate that she was more likely fired because of her disability.

Even if Ms. Matthews could make out a prima facie case of disability discrimination based on her discharge in August 2007, U.S. Steel has articulated a legitimate nondiscriminatory reason for the adverse employment action and, thus, shifts the burden to Ms. Matthews to demonstrate pretext. *See id.* at 1128. "The focus of a pretext inquiry is whether the employer's reason is honest, not whether it is accurate or wise." *Barricks v. Eli Lilly and Co.*, 481 F.3d 556, 560 (7th Cir. 2007). In this case, U.S. Steel asserts that it discharged Ms. Matthews in August 2007 because it concluded that the surveillance tape depicted actions that were inconsistent with her statements about her condition to medical personnel in the spring and summer of 2007. At her deposition, Ms. Matthews concurred, testifying that U.S. Steel discharged her based upon its review of the tape.

Ms. Matthews' only proffered evidence of pretext for her August 2007 termination is the circumstances surrounding her second termination in April 2008 by U.S. Steel following the March 2008 arbitration hearing. Ms. Matthews argues that 1) U.S. Steel should have brought all of its

charges against her in the first arbitration hearing, 2) no reasonable accommodations were made after U.S. Steel was told by the first arbitrator in July 2008 to reinstate Ms. Matthews with restrictions, and 3) Ms. Matthews was discharged in April 2008. These arguments are untenable given the sequence of events. First, U.S. Steel only became aware of the basis for the second, and final, termination during the course of Ms. Matthews' testimony at the first arbitration hearing. Thus, it would not have been possible to combine the proceedings. Second, U.S. Steel terminated her on this new basis months prior to learning of the first arbitrator's adverse decision. Finally, the arbitrator's decision is governed by a different legal standard than the one for establishing pretext under the ADA. Ms. Matthews has not demonstrated that U.S. Steel did not honestly believe, based on the surveillance video, that she misrepresented the severity of her impairments in the spring and summer of 2007. On this additional basis, Ms. Matthews' ADA claim based on her termination fails.

**CONCLUSION**

Based on the foregoing and because there are no genuine issues of material fact remaining for trial on Ms. Matthews' race and disability discrimination claims, the Court hereby **GRANTS** Defendant U.S. Steel's Motion for Summary Judgment [DE 37] and **DENIES** Plaintiff Matthews' Motion for Summary Judgment [DE 50]. The Court **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant U.S. Steel and against Plaintiff Deborah Matthews as to all of her claims in her Complaint in 2:08cv37 and on her Complaint in 2:08cv166. This Opinion and Order does not affect U.S. Steel's Counterclaim, which **REMAINS PENDING**.

SO ORDERED this 24th day of May, 2010.

s/ Paul R. Cherry

MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATE DISTRICT COURT

cc:  All counsel of record